UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Phillip Walicki

    Debtor
_____/

Case No. 15-50784
Chapter 13
Hon. Walter Shapero

## OPINION INCIDENT TO OBJECTIONS TO CONFIRMATION OF THIRD AMENDED CHAPTER 13 PLAN

### Introduction

FirstMerit Bank, N.A. ("FirstMerit") objected to the confirmation of Debtor's proposed Chapter 13 plan, as amended, on two grounds: (1) that Debtor's reorganization contemplates operating a farm to which he does not have full legal title, but only an inheritance expectancy interest; and (2) that Debtor's income is insufficient to fund the plan, thus rendering it not feasible. FirstMerit waived or abandoned other objections. The procedural history of this case is (1) the original plan, Dkt. 13, was filed on July 31, 2015; (2) a First Amended Plan, Dkt. 41, was filed on December 18, 2015; (3) on January 25, 2016, the Court set an evidentiary hearing on that First Amended Plan for March 7, 2016; (4) prior to that evidentiary hearing, the Debtor filed and served a Second Amended Plan, Dkt. 54, on February 19, 2016; (5) the evidentiary hearing scheduled for March 7, 2016 was held and concluded; and (6) subsequent to that hearing, the Debtor filed a Third Amended Plan, Dkt. 70, on April 23, 2016, incident to filing a post-hearing brief. In their post-hearing briefs, the contending parties both argue the issues based on the Third Amended Plan and this Opinion are also based on that plan. If this history alone might present procedural problems (and none have been raised), it is not necessary to address or be concerned

1

about them because the Court has concluded it is denying confirmation of that Third Amended Plan on feasibility grounds.

Facts

Debtor has been employed as a tool and die maker with Ford Motor Company for 19 years and, per his most recently amended Schedule I, has a monthly take-home pay of $6,113. Debtor testified that his hourly wage is $33.84 and that his job is secure and will remain so throughout the five year life of the proposed plan and until his retirement. He further testified that his job has readily available overtime (as indicated by a December 2015 paystub), which he anticipates continuing. He also testified that his job offers unspecified as to amount and/or frequency periodic profitsharing or bonus income. Debtor's non-filing spouse has worked as a school aide for two months, and has a monthly take-home pay of $93. They have three minor children living in their household. Debtor's monthly net income after expenses is $2,690.

Debtor's mother, Angela Walicki, executed a will dated December 5, 2002, leaving all her assets to Debtor. Among her assets is a farm in Parma, Michigan, comprised of some two or three parcels totaling hundreds of acres, including farmland and an adjacent residence. The farm has been in Debtor's family for several decades. Debtor has lived on that farm and regularly worked it for many years. Debtor and his mother jointly signed a secured note with FirstMerit, renewing a prior loan that had matured. FirstMerit filed a proof of claim of $89,549.25, and the security agreement and perfected financing statement covers all farm products, including crops, livestock, equipment, tools, and intangibles, but *not* any real property. Debtor's Schedule B lists his ownership of farm machinery, drills, grinders, tools, farm equipment, seed, crops, and livestock. Debtor's mother died on September 14, 2014. Debtor is currently in possession of the farm, operates it as the principal manager, and receives the farm income.

Upon a petition by FirstMerit, a Jackson County Probate Court case as to her estate was opened in October 2015, and attorney Robert Flack was appointed as personal representative in November 2015. Neither FirstMerit nor any other person has challenged the validity of the referred-to will. It is also uncontested that Debtor is the sole heir of his deceased mother. To date, only FirstMerit has filed a claim in the probate case. The probate estate has no cash on hand and remains open, subject to further administration, including apparently, a resolution by Mr. Flack of some contested issues as to whether a 37 acre parcel comprising the referred-to farm is in fact part of the probate estate or is instead owned by Debtor. It is not clear to what extent the noted personal property that Debtor listed on his Schedule B is also somehow implicated in the probate. Mr. Flack was unable or unwilling to approximate the closing date of the probate estate, but did indicate that "it could possibly take a couple years."

Debtor filed this Chapter 13 bankruptcy case on July 17, 2015, which was subsequent to his mother's death, but prior to the opening of the probate case. On his Amended Schedule A, Debtor listed an interest in the referred-to residence located at 6975 Pomeroy Road, Parma, Michigan, and a farm located at 6340 Pomeroy Road, which he further described as "Future interest pursuant to 11 USC 541 (a) (5)". Debtor's proposed Third Amended Chapter 13 Plan (most recently amended on April 23, 2016, subsequent to the evidentiary hearing in this Court), contemplates Debtor making the following payments: (a) $390 per week (i.e. $1,690 per month) to the Chapter 13 Trustee; (b) $1,426.69 per month to FirstMerit via the Trustee; (c) a $48,000 lump sum payment to FirstMerit within 30 days of confirmation; and (d) $12,000 lump sum payments to FirstMerit at the end of each of the years 2016, 2017, 2018, and 2019. Debtor intends to fund the $48,000 lump sum payment using cash on hand sourced from an approximately $30,000 post-petition 401(k) loan. Incident to that, Debtor provided evidence of a

3

bank account balance of $66,291.22 as of January 20, 2016. Debtor intends to fund the other plan payments by way of income from his employment with Ford and operation of the farm. The net farm income has fluctuated over the past three years. It was $6,258 in 2013, $8,953 in 2014, and $36,000 in 2015 (with the three year average being just over $17,000 per year, or $1,420 per month). Debtor's most recent Schedule I accounts for $1,760 of farm income per month. The plan payment structure appears to take into account that both Debtor's total annual employment and farm income are in fact received in different and varying amounts during different months of the year.

## Discussion

As noted, FirstMerit's first objection to confirmation is that Debtor does not have full legal title to the farm property, but instead has only an inheritance expectancy interest in it incident to the probate case, and thus the farm property is not property of his bankruptcy estate. Pursuant to § 541(a)(1), Debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Applicable Michigan law provides:

> An individual's power to leave property by will, and the rights of creditors, devisees, and heirs to his or her property, are subject to the restrictions and limitations contained in this act to facilitate the prompt settlement of estates. *Upon an individual's death, the decedent's property devolves to the persons to whom the property is devised by the decedent's last will* or to those indicated as substitutes for them in cases involving lapse, disclaimer, or other circumstances affecting devolution of a testate estate, or in the absence of testamentary disposition, to the decedent's heirs or to those indicated as substitutes for them in cases involving disclaimer or other circumstances affecting devolution of an intestate estate, subject to homestead allowance, family allowance, and exempt property, to rights of creditors, to the surviving spouse's elective share, and to administration.

Mich. Comp. Laws § 700.3101 (emphasis added). As stated in *Abbott v. Estate of Abbott*, No. 254875, 2005 WL 3050383, at *2 (Mich. Ct. App. Nov. 15, 2005), "Upon the death of the owner, the title to real property passes to and vests in the decedent's heirs rather than his personal

representatives. *Pardeike v. Fargo,* 344 Mich. 518, 522; 73 NW2d 924 (1955). As our Supreme Court explained in *In re Allen's Estate,* 240 Mich. 661, 665; 216 NW 446 (1927), '[i]n a testate estate it is the will that gives title. When probated, it is an instrument of title, relating back to the death of the testator and taking effect as of that time.'" Additionally, "Where time of passage of title of real estate devised is in question, probate of a will is retroactive back to date of testator's death." *Feschuk v. Feschuk*, No. 211155, 2000 WL 33421594, at *1 (Mich. Ct. App. Apr. 28, 2000) (citing *Stewart v. Hunt,* 303 Mich. 161, 167; 5 NW2d 737 (1942)). "An instrument submitted as a final testament enjoys no legal distinguished from evidentiary worth unless and until it is authenticated by judgment." *In re Powers' Estate*, 362 Mich. 222, 229, 106 N.W.2d 833, 836 (1961) (quoting *In re Dutton's Estate*, 347 Mich. 186, 191, 79 N.W.2d 608, 610 (1956)). That is consistent with Michigan Land Title Standard 7.2, which states: "The will of a testate decedent, when probated, conveys the decedent's title to real property as of the time of death subject to… the possibility of sale for any purpose permitted by the Estates and Protected Individuals Code (EPIC)[.]"

Given the foregoing, plus the indicated facts that Debtor is currently in possession of the farm, is its principal manager, and is receiving the income from it, there are no other heirs to his mother's estate, the will is uncontested, and FirstMerit appears to be the only creditor participating in the probate claims process, it must necessarily be concluded he has a sufficient "equitable" interest in the property to have it be considered property of the bankruptcy estate.

Regardless, as a separate and independent legal basis, the Court concludes that § 541(a)(5)(A) and § 1306(a)(1) would serve to bring into the bankruptcy estate whatever interest Debtor might obtain upon the closing of the probate estate. Section 541(a)(5)(A) provides:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
>
>> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date--
>>
>>> (A) by bequest, devise, or inheritance;

It should also be noted that § 1306(a)(1) provides:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title--
>
>> (1) all property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first;

Based on all of the foregoing and regardless of how one might categorize the nature of Debtor's interest in the property at the time of the bankruptcy filing or at the present time, quite clearly, the farm presents a sufficiently certain and likely source of income to the Debtor to permit the farm and that income to be considered in connection with the feasibility of Debtor's Chapter 13 plan.

FirstMerit's second objection to confirmation is that Debtor does not earn sufficient income to fund the proposed plan payments. 11 U.S.C. § 1325(a)(6) states that the Court shall confirm the plan if "the debtor will be able to make all payments under the plan and to comply with the plan[.]" "Feasibility is a factual issue and the burden of demonstrating the feasibility of the proposed chapter 13 plan is on the Debtor." *In re Gomery*, 523 B.R. 773, 788-89 (Bankr. W.D. Mich. 2015). The feasibility requirement is generally not rigorous. *In re Weiss*, 251 B.R. 453, 467 (Bankr. E.D. Pa. 2000). The Court adopts the well-reasoned standard set forth in *In re Compton*, 88 B.R. 166, 167 (Bankr. S.D. Ohio 1988), to wit:

In this Court's experience, Chapter 13 debtors rarely have any reliable guarantee of employment. All that is required for the Court to find that a plan is feasible, where the budget is based upon reasonable, affordable expenses, is that the debtors' expectations of income are sufficiently realistic that they should be given an opportunity to carry out the plan they propose. It has been stated that:

"A debtor proposing a Chapter 13 plan need not prove that the plan is guaranteed to be successful. Virtually every plan that requires some performance in the future will be subject to a risk factor affecting its successful completion. This Court's judicial discretion is to be exercised, then, to determine *at the time of confirmation* whether the risk of failure of the proposed plan is impermissible." In re Anderson, 18 B.R. 763, 765 (Bankr.S.D.Ohio 1982), *aff'd* 28 B.R. 628 (S.D.Ohio 1982).

Utilizing the *Anderson* standard, the Court finds that the income projected to accomplish the payments proposed by the Comptons is not so speculative that the debtors' risk of failure is impermissibly great. Therefore, the plan proposed by these debtors satisfies the feasibility requirement of 11 U.S.C. § 1325(a)(6).

(emphasis original).

Mathematically, this Debtor's presently proposed plan does not meet that feasibility standard. The initial $48,000 lump sum payment to FirstMerit will be paid from cash on hand. But as to the subsequent required regular periodic payments, as noted, Debtor's Schedule I estimates a monthly net income of $2,690, which is inclusive of both his employment income from Ford and farm operations income.[1] Debtor's monthly plan payments are $1,690 to the Trustee, plus $1,426.69 to FirstMerit via the Trustee, plus $1,000 (which is a *pro rata* monthly portion of the proposed $12,000 year-end lump sum payments to FirstMerit), all totaling $4,116.69. Thus, by at least this arithmetic, Debtor's plan, by its own terms, begins with a $1,426.69 monthly deficit.

---

[1] The monthly net income figure also factors in an income deduction for Debtor's referred-to post-petition 401(k) loan repayment. Specifically, Debtor's Schedule I (Dkt. 40) formerly provided on line 5h a deduction for "Retirement" in the amount of $750. As more recently amended (Dkt. 75), it now provides a deduction for "Retirement (now TESP Loan)" in the amount of $1,131. The Court finds that such amendment moots FirstMerit's argument (Dkt. 74 at 20) that the 401(k) loan repayment should be considered as an additional expense beyond what is scheduled.

7

The farm income is central to the feasibility inquiry. As noted, Debtor's Schedule I estimates monthly farm income to be $1,760, which is somewhat higher than the actual average $1,420 monthly farm income realized over the past three years. As to farm income, it is particularly difficult and somewhat speculative to estimate what level of income a farm might produce each year, let alone over the next five years, dependent as it is on global crop prices, currency markets, weather events, and countless other factors, many if not most of which are not within a farmer's control. To an extent, a certain amount of leeway can be permitted given the nature of Debtor's farm income and the inherent fluctuations and volatility involved in that business. However, Debtor's own stated income figures, as compared to his own proposed plan payments, begin with simply too much of a deficit to be feasible. To make up the stated deficit solely by farm income, farm income would have to be $3,186.69 per month, or $38,240.28 annually. While that accomplishment is apparently not outside the realm of possibility, given that the farm produced $36,000 of income in 2015, it essentially requires the Court to rely on assumptions that the Debtor did not himself make. Debtor indicated he had possible sources of augmented regular employment wages, testifying that he is regularly entitled to partake in profitsharing and bonuses from Ford and that he relies on such for the payment of ordinary household expenses. However, he did not sufficiently specify those amounts of that income or how regularly he obtains it or indicate what specific evidence supports whatever figures he puts forward. It may indeed be very well possible for Debtor to propose a feasible plan. However, based on the indicated analysis, confirmation of this particular one must be denied.

Lastly, Debtor requested that the order confirming plan contain a provision stating that the farm property is not to be sold by the Probate Court without further order of the Bankruptcy Court. FirstMerit objected to this proviso on grounds that this Court lacks authority to limit the

Probate Court's power to order the sale of the property under applicable Michigan law. This objection has merit, but in so stating, the Court cautions that the Court is not opining on what effect, if any, the pending bankruptcy proceedings or any future proposed plan have on the pending probate proceedings, or vice versa.

Conclusion

For the indicated reasons, confirmation of Debtor's proposed Third Amended Chapter 13 Plan is denied and, if Debtor choses to propose another plan, Debtor shall amend his schedules and/or plan no later than August 10, 2016. FirstMerit shall present an appropriate order.

**Signed on July 19, 2016**

                /s/ Walter Shapero
                **Walter Shapero**
                **United States Bankruptcy Judge**